FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ OCT 02 2015 ★

BROOKLYN OFFICE

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

MARIANNE KOCHILAS and EBONY
COPELAND, individually and on behalf of all
others similarly situated,
                     Plaintiffs,

-against-

NATIONAL MERCHANT SERVICES, INC.,
RELIABLE MANAGEMENT SERVICES, INC.,
SEMYON VAYS, AND MAX KATSAP
                     Defendants.

Civil Action No. 1:14-cv-00311

**ORDER GRANTING PLAINTIFFS' UNOPPOSED MOTION FOR FINAL
CERTIFICATION OF THE SETTLEMENT CLASS, FINAL APPROVAL OF THE CLASS
ACTION SETTLEMENT, AND APPROVAL OF THE FLSA SETTLEMENT AND
APPROVAL OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES**

Plaintiffs Marianne Kochilas and Ebony Copeland ("Named Plaintiffs") initiated this Action against Defendants on January 15, 2014 pursuant to Federal Rule of Civil Procedure 23 ("FRCP"), the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201 et seq. ("FLSA") and the New York Labor Law, Ch. 31 of the Consolidated Laws of New York ("NYLL"). Plaintiffs' pleading alleged "hybrid collective and class action" claims on behalf of themselves and others who are similarly situated (the "Plaintiffs"). *See* Haskell Decl. ¶ 3. Plaintiffs, who were employed by Defendants as non-exempt hourly telemarketers, appointment setters, junior agents, inside sales, allege that they and similarly situated employees were not paid proper overtime compensation and were subject to unlawful deductions from earned wages. *Id.* ¶¶ 4, 8.

The lawsuit sought, inter alia, certification of this Action as a "collective action" under the FLSA and as a "class action" under FRCP 23 and state law, and sought unpaid overtime

wages, prejudgment interest, liquidated damages, and attorneys' fees and costs. *Id.* ¶ 3, 8. In response to the Lawsuit, on March 28, 2014, Defendants NMS and Vays timely answered Plaintiffs' Complaint, denying Plaintiffs' allegations and on April 11, 2014 Defendants RMS and Katsap similarly filed their answer. *Id.* ¶ 6-7. The Parties engaged in informal discovery and active litigation of the lawsuit, including: (1) Plaintiffs' counsel conducted investigation and legal research on the underlying merits of class members' claims, the damages to which they were entitled, and the propriety of class certification. *Id.* ¶ 13. (2) Plaintiffs' counsel interviewed the Named Plaintiffs and other potential witnesses to determine the hours that they worked, the wages they were paid, the nature of their daily activities, and other information relevant to their claims. *Id.* ¶ 14. (3) Plaintiffs' counsel also obtained and reviewed documents from Plaintiffs and other opt ins, as well as documents produced by Defendants during informal discovery, including but not limited to, records of Plaintiffs' paystubs and timesheets. *Id.* ¶ 15-16. (4) Plaintiffs' counsel assisted with the preparation of the Complaints, the factual investigations of claims and in preparing for settlement negotiations. *Id.* ¶ 12. (5) Plaintiffs' counsel also conducted extensive legal research on matters such as class certification standards and risk, factually similar class certification cases, summary judgment risk, risk attendant to employee misclassification and overtime litigation, the appropriate scope of representative discovery sampling for class discovery, Defendants' anticipated defenses, and Plaintiffs' damages. *Id.* ¶ 17.
Subsequent to the filing of the Lawsuit, 4 former alleged employees joined it by filing Consent to Join forms with the Court. *Id.* ¶ 5.

On or around April 16, 2014, Plaintiffs and Defendants, attended an Initial Conference before Magistrate Judge Azrack and expressed interest in an in-person settlement conference which occurred on April 30, 2014. *Id.* ¶ 10-11. During the conference, the parties agreed to

proceed with informal discovery and attempt to resolve this matter through settlement discussions, which commenced in September 2014. *Id.* ¶ 20. As a result of the numerous settlement discussions, the parties reached an agreement as to the resolution of class claims. *Id.* ¶ 22-23. At all times during the settlement negotiation process, negotiations were conducted on an arm's-length basis. *Id.* ¶ 23.

After a number of additional discussions, on December 10, 2014, the Parties agreed on the detailed, formalized terms memorialized in the class-wide settlement of this action, as set forth in Joint Stipulation of Settlement appended as Exhibit 2 to the Haskell Declaration (the "Joint Stipulation," "Settlement," or "Settlement Agreement"). The Settlement Agreement resolves all claims alleged in the Complaint, provides meaningful benefits to Class Members, and satisfies all of the "fairness" criteria for final approval. *Id.* ¶ 27.

On March 18, 2015, the Parties jointly moved for preliminary approval of the class settlement, scheduling a fairness hearing, and related relief, including, appointment of Plaintiffs' counsel as class counsel and approval of the proposed Class Notices. Dkt. Nos. 36-38. The Court subsequently held two telephone conferences, on June 23, 2015 and June 24, 2015 to address plaintiffs' motion for preliminary certification of a class action settlement. Following the teleconferences with Judge Bloom, the Plaintiffs filed a supplemental motion seeking preliminary approval of the class settlement. Dkt. Nos. 42-44. On July 22, 2015, the Court granted the Parties' joint motion based on the Joint Stipulation and, amongf other things, approved the Class Notices. Dkt. No. 46.

Defendants' counsel supplied Class Counsel with a spreadsheet which represented the list of the names and known contact information for the Class Members. Review of the data contained in the electronic files revealed there were 282 Class Members. Haskell Decl. ¶ 32. On

July 31, 2015, Class Counsel caused to be served by First Class U.S. Mail the Notice of Class Action Settlement and Request for Exclusion Form (referred to as the "Notice Packets") to all Class Members. *Id.* ¶ 33.

Through the Class Notices, all Class Members have been notified of the terms of the settlements and their proposed relief, the allocation formula, the Class Members' right to opt out through the submission of an Exclusion Form, Class Counsel's anticipated fees, and all Class Members' rights to object to the settlement. *Id.* ¶¶ 31-33 and Ex. 3 thereto.

After mailing the Notice Packets, 42 were returned by the United States Postal Service as undeliverable. *Id.* ¶ 34. A few of these Notice Packets had a forwarding address provided by the United States Postal Service. *Id.* Class Counsel performed an address search for the additional Notice Packets returned without a forwarding address to locate the most recent addresses. *Id.* ¶ 25. Class Counsel mailed Notice Packets to 14 Class Members for whom an updated address was located. *Id.* There are 28 Notice Packets for which no new address was located. *Id.* Class Counsel has received no Request for Exclusion Forms and no objections to the Settlement. Id. ¶ 37.

On September 16, 2015, Plaintiffs filed their Motion for Certification of the Settlement Class, Final Approval of the Class Action Settlement and Approval of FLSA Settlement ("Motion for Final Approval"). The same day, Plaintiffs also filed their Motion for Approval of Attorneys' Fees and Reimbursement of Expenses ("Motion for Fees"). Defendant did not oppose these motions. The Court held a fairness hearing on September 30, 2015. Having considered the Motion for Final Approval, the Motion for Fees, the supporting declarations, and the complete record in this matter, for good cause shown,

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND**

**DECREED:**

### Approval of the Settlement Agreement and Certification of Class

1. The Court hereby grants the Motion for Final Approval, approves the settlement as fair, reasonable, and adequate, and certifies the Class as set forth in the Settlement Agreement and this Order under Federal Rule of Civil Procedure 23.

2. The Class consists of all individuals who were employed by NMS and/or RMS as non-exempt hourly telemarketers, appointment setters, inside sales and similar positions at any time between January 15, 2008 and July 22, 2015 (the date the Order approving the Motion for Preliminary Approval was entered).

3. Rule 23(e) requires court approval for a class action settlement to ensure that it is procedurally and substantively fair, reasonable, and adequate. See Fed. R. Civ. P. 23(e). To determine whether a settlement is procedurally fair, courts examine the negotiating process leading to the settlement. *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001). To determine whether a settlement is substantively fair, Courts determine whether the settlement's terms are fair, reasonable and adequate according to the factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974).

4. Courts examine procedural and substantive fairness in light of the "strong judicial policy favoring settlements" of class action suits. *Wal-Mart Stores*, 396 F.3d at 116; *see also Spann v. AOL Time Warner, Inc.*, No. 02 Civ. 8238, 2005 WL 1330937, at *6 (S.D.N.Y. June 7, 2005) ("[P]ublic policy favors settlement, especially in the case of class actions."). "Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ.

10240, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007).

5.  "In evaluating the settlement, the Court should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation; a presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in armslength negotiations between experienced, capable counsel after meaningful discovery." *Clark v. Ecolab Inc.*, Nos. 07 Civ. 8623, 04 Civ. 4488, 06 Civ. 5672, 2010 WL 1948198, at *4 (S.D.N.Y. May 11, 2010) (internal quotation marks and citation omitted). The Court gives weight to the parties' judgment that the settlements are fair and reasonable. *See Torres v. Gristede's Operating Corp.*, No. 04 Civ. 3316, No. 08 Civ. 8531, No. 08 Civ. 9627, 2010 WL 5507892, at *3 (S.D.N.Y. Dec. 21, 2010); *Diaz v. E. Locating Serv. Inc.*, No. 10 Civ. 4082, 2010 WL 5507912, at *3 (S.D.N.Y. Nov. 29, 2010); *Clark*, 2010 WL 1948198, at *4.

### The Settlement Is Procedurally Fair

6.  The settlement is procedurally fair, reasonable, adequate, and not a product of collusion. *See* Fed. R. Civ. P. 23(e); *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 184 (citing *Joel A. v. Giuliani*, 218 F.3d 132, 138-39 (2d Cir. 2000)). Here, the Settlement was reached after Class Counsel had conducted a thorough investigation and evaluated the claims and after extensive negotiations between the parties.

7.  After the filing of the complaint and prior to mediation, 4 former employees joined it by filing Consent to Join forms with the Court for a total of 6 Named and Opt In Plaintiffs. Haskell Decl. ¶¶ 3, 5.

8.  After the filing of the lawsuit, the Parties engaged in informal discovery by among other things, exchanging documents and interviewing potential witnesses concerning the duties, hours worked and pay relating to the allegations in the Lawsuit. *Id.* ¶¶ 12-19.

9. Plaintiffs' counsel assisted with the preparation of the Complaints, the factual investigations of claims, the informal discovery requests and in preparing for settlement negotiations. *Id.* ¶ 12.

10. Plaintiffs' counsel also conducted extensive legal research on matters such as class certification standards and risk, factually similar class certification cases, summary judgment risk, risk attendant to employee misclassification and overtime litigation, the appropriate scope of representative discovery sampling for class discovery, Defendants' anticipated defenses, and Plaintiffs' damages. Id. ¶ 17.

11. From these sources, Class Counsel was able to evaluate the strengths and weaknesses of Plaintiff's claims. *Id.* ¶¶ 12-19.

12. Further, the aforementioned informal discovery conducted by the Parties supports class certification of the settlement class identified by Class Counsel. *Id.* ¶¶ 18-19.

13. While contested by Defendants, Class Counsel alleges that its investigation revealed that Plaintiffs subject to the same unlawful practices alleged in the Complaint. Plaintiffs' Counsels' investigation revealed that Defendants' telemarketer workforce was very transient during the less than three-year period that the alleged unlawful conduct occurred. *Id.* ¶ 18-19. Consistent with the terms of the Settlement, the statements in this paragraph do not constitute an admission of liability by Defendants or a finding of liability by the Court.

14. Similarly contested by Defendants, Class Counsel alleges that its investigation revealed that Plaintiffs and the Class Members were subject to Defendants common policy of failing to keep accurate records of time worked. *Id.* ¶ 18-19. Consistent with the terms of the Settlement, the statements in this paragraph do not constitute an admission of liability by Defendants or a finding of liability by the Court.

15. On or around December 2014, Plaintiffs and Defendants agreed to attempt to resolve this matter through non-binding informal settlement negotiations. *Id.* ¶ 24.

16. Plaintiffs' counsel prepared for settlement discussions by researching, reviewing and selecting documents and witness accounts revealed conflicting evidence regarding the amounts of overtime worked documentary evidence and formulating a settlement demand. A thorough review of all. *Id.* ¶ 21.

17. Between October 214 and December 2014 Plaintiffs and Defendants, via multiple phone conversations, reached an agreement as to the resolution of class claims in a settlement amount of $60,000, inclusive of attorneys' fees and costs and service payments *Id.* ¶¶ 22-24.

18. These arm's-length negotiations involving counsel for the Parties create a presumption that the settlement they achieved meets the requirements of due process. *See Wal-Mart Stores*, 396 F.3d at 116; *Khait*, 2010 WL 2025106 at *5; *Clark*, 2010 WL 1948198 at *5.

19. After a number of additional discussions, the Parties agreed on the detailed, formalized terms memorialized in the class-wide settlement of this action, as set forth in the Parties' Joint Stipulation of Settlement and Release, dated September March 15, 2015, between Plaintiffs and Defendants. Haskell Decl. ¶ 27.

**The Settlement Is Substantively Fair**

20. The settlement is substantively fair. All of the factors set forth in *City of Detroit*, 495 F.2d at 463, which provides the analytical framework for evaluating the substantive fairness of a class action settlement, weigh in favor of final approval.

21. The "Grinnell factors" are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing

damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Grinnell*, 495 F.2d at 463.

22. Litigation through trial would be complex, expensive, and long. Therefore, the first Grinnell factor weighs in favor of final approval.

23. The Class's reaction to the settlements was overwhelmingly positive. Haskell Decl. ¶ 37. The Class Notices included an explanation of the allocation formula. *Id.* at Ex. 3 thereto. The Class Notices also informed Class Members of their right to object to include or exclude themselves from the settlements, and explained how to do so. *Id.*

24. None of the Class Members submitted a timely objection to the Settlement, and no Class Members requested exclusion, resulting in a final Rule 23 Class numbering 282. Haskell Decl. ¶ 33-37. This overwhelmingly favorable response recommends final approval. "The fact that the vast majority of class members neither objected nor opted out is a strong indication" of fairness. *Wright v. Stern*, 553 F. Supp. 2d 337, 344-45 (S.D.N.Y. 2008) (approving settlement where 13 out of 3,500 class members objected and 3 opted out); *see also Willix v. Healthfirst, Inc.*, No. 07 Civ. 1143, 2011 WL 754862, at *4 (E.D.N.Y. Feb. 18, 2011) (approving settlement where only 7 of 2,025 class member submitted timely objections and only 2 requested exclusion). Therefore, the second Grinnell factor weighs in favor of final approval.

25. The parties have completed enough discovery to recommend settlement. The pertinent question is "whether counsel had an adequate appreciation of the merits of the case before negotiating." *Torres*, 2010 WL 5507892, at *5 (quoting *In re Warfarin Sodium Antitrust*

*Litig.*, 391 F.3d 516, 537 (3d Cir. 2004)). Here, over the course of approximately 6 plus before entering into settlement discussions, Plaintiffs obtained substantial informal discovery, including documentary evidence, witness testimony, and data to effectively determine Class Members' damages. The third Grinnell factor weighs in favor of final approval.

26. The risk of establishing liability and damages further weighs in favor of final approval. "Litigation inherently involves risks." *In re Painewebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997). One purpose of a settlement is to avoid the uncertainty of a trial on the merits. *In re Ira Haupt & Co.*, 304 F. Supp. 917, 934 (S.D.N.Y. 1969). Here, the fact intensive nature of Plaintiffs' claims and Defendant's defenses thereto presents risk. The settlements eliminate this uncertainty. The fourth and fifth Grinnell factors weigh in favor of final approval.

27. The risk of obtaining and maintaining class status throughout trial also weighs in favor of final approval. A motion to decertify the class would likely require extensive discovery and briefing, possibly followed by an appeal, which would require additional rounds of briefing. Settlement eliminates the risk, expense, and delay inherent in this process. The sixth Grinnell factor weighs in favor of final approval.

28. The Defendant's ability to withstand a greater judgment is not clear. Certainly, the settlements eliminated the risk of collection, as the Settlement Agreement identifies the method for payout of the Settlement Payment. Moreover, even if protracted litigation were to yield a judgment larger than the Settlement Payment and although Defendant might be able to withstand a judgment greater than the Settlement Payment, "standing alone, [this] does not suggest that the settlement is unfair." *See Austrian and German Bank*, 80 F.Supp.2d at 178 n. 9 (citing *In re PaineWebber Ltd. Partnerships Litig.*, 171 F.R.D. 104, 129 (S.D.N.Y. 1997)) ("[T]he fact that a

defendant is able to pay more than it offers in settlement does not, standing alone, indicate the settlement is unreasonable or inadequate."). The seventh Grinnell factor is neutral and doesn't preclude final approval since all of the other Grinnell factors favor final approval.

29. The amount of the settlement weighs strongly in favor of final approval. The determination of whether a settlement amount is reasonable "does not involve the use of a 'mathematical equation yielding a particularized sum.'" *Frank*, 228 F.R.D. at 186 (quoting *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 178). "Instead, 'there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Id.* (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)). In this case, based on Plaintiffs' pre-settlement investigation, the Class Members will receive adequate compensation for the underpayment of wages under the terms of the Settlement Agreement. The eighth and ninth Grinnell factors favor final approval.

**Approval of the FLSA Settlement**

30. The Court hereby approves the FLSA settlement.

31. The standard for approval of an FLSA settlement is lower than for a Rule 23 settlement because an FLSA settlement does not implicate the same due process concerns as does a Rule 23 settlement. *McKenna v. Champion Int'l Corp.*, 747 F.2d 1211, 1213 (8th Cir.1984); Torres, 2010 WL 5507892, at *6; Clark, 2010 WL 1948198, at *7.

32. Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes. *Clark*, 2010 WL 1948198, at *7; *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 n.8 (11th Cir. 1982). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the

settlement." *Torres*, 2010 WL 5507892, at *6 (citations omitted). If the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be approved. *Lynn's Food Stores*, 697 F.3d at 1354; *Clark,* 2010 WL 1948198, at *7.

33. The Court finds that the FLSA settlement was the result of contested litigation and arm's length negotiation.

### Dissemination of Notice

34. Pursuant to the Preliminary Approval Order, dated July 22, 2115 (Dkt. No. 46), the Notices Packets were sent by first-class mail to each identified Class Member at his or her last known address (with re-mailing of returned Notice Packets). Haskell Decl. ¶¶ 31-36. The Court finds that the Class Notices fairly and adequately advised Class Members of the nature of the action, a description of the Class, the Class Members' right to exclude themselves from the settlement, and the right of all Class Members to object to the settlements, to be represented by counsel, and to appear at the fairness hearing. Class Members were provided the best notice practicable under the circumstances. The Court further finds that the Class Notices and distribution of such Class Notices comported with all constitutional requirements, including those of due process.

### Award of Fees and Costs to Class Counsel's Firm

35. On July 22, 2015 (Dkt. No. 46), the Court appointed Rachel M. Haskell of The Law Office of Christopher Davis as Class Counsel because the firm met all of the requirements of Federal Rule of Civil Procedure 23(g).

36. Class Counsel and the attorneys with the Firm, The Law Office of Christopher Q. Davis, PLLC, did substantial work identifying, investigating, prosecuting, and settling Plaintiffs' and the Class Members' claims.

37. Class Counsel has substantial experience prosecuting and settling employment class actions, including wage and hour class actions, and is well-versed in wage and hour law and in class action law. See Haskell Decl. ¶¶ 42-56.

38. The work that Class Counsel and his Firm have performed in litigating and settling this case demonstrates their commitment to the Class and to representing the Class's interests. Class Counsel has committed substantial resources to prosecuting this case and has obtained commendable results for the Class Members' underpayment and securing a very high participation rate among the putative class and no objectors to the Settlement.

39. The Court hereby grants Plaintiff's Motion for Attorneys' Fees and awards Class Counsel's Firm $20,000 in attorneys' fees or one-third of the Maximum Settlement Amount.

40. The Court finds that the amount of fees requested is fair and reasonable using the "percentage-of-recovery" method, which is consistent with the "trend in this Circuit." *See McDaniel v. Cty. Of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010); *Diaz*, 2010 WL 5507912, at *7-8 (following percentage-of-the-fund method); *deMunecas*, 2010 WL 3322580, at * 8-9 (same); *Clark*, 2010 WL 1948198, at *8-9 (same); *Reyes v. Buddha-Bar NYC*, No. 08 Civ. 2494, 2009 WL 5841177, at *4 (S.D.N.Y. May 28, 2009) (same); *Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 261-62 (S.D.N.Y. 2003) (collecting cases adopting the percentage-of-the-fund method); *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 483-85 (S.D.N.Y. 1998) (same).

41. In wage and hour class action lawsuits, public policy favors a common fund attorneys' fee award. *See Frank*, 228 F.R.D. at 189. Where relatively small claims can only be prosecuted through aggregate litigation, "private attorneys general" play an important role. *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 338-39 (1980). Attorneys who fill the private

attorney general role must be adequately compensated for their efforts. If not, wage and hour abuses would go without remedy because attorneys would be unwilling to take on the risk. *Goldberger v. Integrated Res. Inc.*, 209 F.3d 43, 51 (2d Cir. 2000) (commending the general "sentiment in favor of providing lawyers with sufficient incentive to bring common fund cases that serve the public interest"). Adequate compensation for attorneys who protect wage and hour rights furthers the remedial purposes of the FLSA and the NYLL. *See Braunstein v. E. Photo. Labs., Inc.*, 600 F.2d 335, 336 (2d Cir. 1975), *cert. denied*, 441 U.S. 944 (1979) (discussing remedial purpose of FLSA); *Ramos v. Marksue Realty Corp.*, 586 F. Supp. 488, 492 (S.D.N.Y. 1984) (discussing remedial purpose of NYLL); *Samiento v. World Yacht Inc.*, 883 N.E.2d 990, 994 (N.Y. 2008) (discussing remedial purpose of NYLL).

42. Class Counsel's request for one-third of the Settlement Fund, or the Settlement Payment as that term is defined in Paragraph 6 of the Settlement Agreement, is reasonable and "consistent with the norms of class litigation in this circuit." *Diaz*, 2010 WL 5507912, at *7 (quoting *Gilliam v. Addicts Rehab. Ctr. Fund*, No. 05 Civ. 3452, 2008 WL 782596, at *5 (S.D.N.Y. Mar. 24, 2008)); *see also deMunecas*, 2010 WL 3322580, at *8 (granting class counsel 33% of settlement fund in wage and hour class action); Clark, 2010 WL 1948198, at *8-9 (awarding class counsel one-third of settlement fund in wage and hour class action); *Duchene v. Michael Cetta, Inc.*, No. 06 Civ.4576, 2009 WL 5841175, at *3 (S.D.N.Y. Sept. 10, 2009 (awarding class counsel 32.2% of $3,150,000 fund in FLSA and NYLL case); *Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*, No. 06 Civ. 4270, 2009 WL 5851465, at *5 (S.D.N.Y. Mar. 31, 2009) (awarding 33% of $3,265,000 fund in FLSA and NYLL case); *Stefaniak v. HSBC Bank USA, N.A.*, No. 05 Civ. 720S, 2008 WL 7630102, at *3 (W.D.N.Y. June 28, 2008) (awarding 33% of $2.9 million fund in FLSA and NYLL case); *Maley v. Del Global*

*Tech. Co.*, No. 00 Civ. 8495, 186 F. Supp. 2d 358, 370 (awarding 33 1/3% fee on fund valued at $11.5 million); *Cohen v. Apache Corp.*, No. 89 Civ. 76, 1993 WL 126560, at *1 (S.D.N.Y. Apr. 21, 1993) (awarding 33 1/3% of $7.75 million fund).

43. Class Counsel risked time and effort and advanced costs and expenses, with no ultimate guarantee of compensation. A percentage-of-recovery fee award of one-third (1/3), or 33.3%, amounting to less much less than Class Counsel's lodestar.

44. All of the factors in *Goldberger v. Integrated Res. Inc.*, 209 F.3d 43, 50 (2d Cir. 2000) weigh in favor of a fee award of one-third (1/3) of the Settlement Amount.

45. Moreover, "[i]n choosing the proper baseline for calculation of fee percentage, our Circuit case law directs courts to focus on fairly compensating counsel for work actually performed, given that 'the entire fund, and not some portion [of it], is created through the efforts of counsel at the instigation of the entire class. An allocation of fees by percentage should therefore be awarded on the basis of the total funds made available, whether claimed or not.' " *Alleyne v. Time Moving and Storage, Inc.*, 264 F.R.D. 41, 58-59 (E.D.N.Y. 2010) (citing and quoting *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 437 (2d. Cir.2007)) (internal quotes omitted).

46. The fact that Class Counsel's fee award will not only compensate them for time and effort already expended, but for time that they will be required to spend administering the settlement going forward also supports their fee request. *Diaz*, 2010 WL 5507912, at *7; *Clark*, 2010 WL 1948198, at *9.

### Conclusion

47. "Final Approval" of the Settlement or the "Effective Date" shall be thirty (30) days after the Court has entered Judgment, if no party has sought rehearing, reconsideration, or

appellate review; or if rehearing, reconsideration and appellate review is sought, the day after any and all avenues of rehearing, reconsideration and appellate review have been exhausted and no further rehearing, reconsideration or appellate review is permitted, and the time for seeking such review has expired and the Judgment not been has subject to fundamental change as a result of rehearing, reconsideration or appellate review. Settlement Agreement ¶ 9.

48. Defendants shall deliver all payments due under the Settlement Agreement to Class Members within twenty-one (21) days of the Effective Date. *Id.* ¶ 4(e).

49. Subject to and in accordance with the Settlement Agreement, the award of attorneys' fees and costs will be deducted from the Settlement Payment and paid to Class Counsel within twenty-one (21) days of the Effective Date. *Id.* ¶ 6(b).

50. Deductions for the Participating Class Member's share of federal, state and local income tax withholding and the employee share of the FICA tax will be made according to Paragraph 7 of the Settlement Agreement. *Id.* ¶ 7.

51. This action shall be and hereby is dismissed on the merits with prejudice, and all Class Members and Collective Action Class Members who failed to timely opt-out of the settlement shall be and are permanently barred from prosecuting against the Releasees (as defined in the Settlement Agreement at Paragraph 3(b)) any and all claims, liabilities, demands or causes of action, known or unknown, that he/she may have against the Releasees arising out of the performance of labor or service as an employee for any reason associated with their employment, whether pursuant to any written or oral contract, written or oral promise or other understanding, or pursuant to any federal, state, or local rule, regulation or law, concerning wages and hours, including without limitation claims under the FLSA and NYLL, arising up to and including the July, 22, 2015, the date that Order approving the Motion for Preliminary

Approval was entered, as well as all claims that were or could have been brought in this action.

52. Though the Court retains jurisdiction over this action for the purpose of enforcing the Settlement Agreement, the judgment is a Final Judgment in accordance with the Settlement Agreement. The parties shall abide by all terms of the Settlement Agreement and this Order.

**SO ORDERED:**

_____

Hon. Lois Bloom

Date:_____

So Ordered: /S/ Judge Lois Bloom
10/2/15
Lois Bloom
U.S. Magistrate Judge
Brooklyn, New York